CARL N. BYERS, Judge pro tempore.
 

 Plaintiff is the owner of a large cattle ranch in Eastern Oregon, only part of which is the subject of this appeal. Plaintiff appeals from a Department of
 
 *[251]
 
 Revenue Order No. VL 79-49, upholding the county’s assessed value on 2,075 acres of plaintiff’s agricultural land as of January 1, 1977.
 

 The land in question can be described as typical Eastern Oregon grazing land. Strung out along the Little Deschutes River, the land is at an elevation of approximately 4,200 feet and receives only 10 inches of rainfall annually. The property’s highest and best use is for the grazing of cattle. Due to its elevation, the land has a short grazing season which normally runs from the middle of June until about the middle of October. The subject property is unusual to the extent that it has approximately 35 miles of extensive cross fencing which divides the property into 28 separate pasture areas.
 

 Because of the land’s use and zoning, ORS 308.370 dictates that the land is to be valued for its farm use purposes only. Under this mandate, the income approach is the only reasonable method of ascertaining the farm use value. Since the land is used for grazing of cattle, the income may be determined from the number of animal units the land will support. The traditional method is to calculate the number of animal units per month (AUM) that the land will support and multiply that number by the economic rent per animal unit. The resulting product represents the potential gross income from the land. Net expenses incurred in maintaining the land are then deducted from the gross income, arriving at a net income from farm use. The net income is then divided by a capitalization rate to arrive at an estimated farm use value. In this case, the parties agree that the proper capitalization rate to be applied to the net income received from the property is .094.
 

 Mr. Cameron Cliff, a cattle rancher of some 40 years’ experience, testified as to the expenses incurred on this property, the number of animal units it would carry and his opinion as to the market rent per AUM
 
 *[252]
 
 as of the assessment date in question. Mr. Cliff explained that the extensive fencing on the property increased operating expenses both in terms of fence maintenance and the manpower required to move the cattle from pasture to pasture. The subject property is also unusual to the extent that Mr. Cliff both fertilizes and reseeds the pasture areas in order to maximize the grass production.
 

 Mr. Kent Rothrock, an experienced real estate appraiser, testified in behalf of the plaintiff. Mr. Roth-rock indicated that the subject property is typical of many such ranches in Eastern Oregon except for the extensive cross fencing. He stated that the expenses for fertilizer and reseeding are also unusual and explained that the additional expenses result in a greater carrying capacity for this land. He concluded, however, that because the increased carrying capacity is bought at the cost of increased operating expenses, the land is worth less per animal unit.
 

 In arriving at his conclusion of value, Mr. Rothrock considered six leases on allegedly comparable grazing lands, three of which were to the plaintiff. All of these leases were for a rent of $5 to $6 per AUM. Most of the leased land is more open and incurs fewer operating expenses. Mr. Rothrock determined that the subject property has a carrying capacity of 430 cows (with bulls and horses thrown in) for five months, resulting in a gross income of $12,900 at $6 per AUM. Mr. Rothrock considers a cow and a calf as one animal unit based on the assumption that the calves are born some time in the spring (March through April). On cross-examination he also indicated that the Klamath marsh area, the location of a number of defendant’s comparable leases, is better than the subject land because it costs less to irrigate, has a more uniform time for use, a longer grazing season and is easier to operate.
 

 Mr. James Huntsman, chief appraiser for Klamath County, testified in behalf of defendant. Mr. Hunts
 
 *[253]
 
 man is likewise an experienced appraiser with practical experience in ranching as well as extensive appraisal experience. Mr. Huntsman prepared a polished and professional appraisal report which concludes that the subject property has a farm use value of $133,950. Mr. Huntsman used comparable grazing leases to determine such factors as economic rent per animal unit, his estimate of grass produced by soil type, the percentage of utilization of the grass production and the expenses incurred by an owner of grazing land. Based upon his analysis, Mr. Huntsman concluded that the subject property will produce feed to carry 381 animal units per month. Mr. Huntsman considers a cow and calf pair to be equal to 1.35 animal units per month.
 

 In considering the areas in dispute, the court notes several weaknesses in Mr. Huntsman’s analysis. His conclusions as to the carrying capacity of the land appear to be based primarily on leases which are to California operators. The significance of this is that calves are bom earlier in California and thus go on the Oregon land with greater appetites and capacity to consume the grass production. On cross-examination Mr. Huntsman also admitted that cattle prefer range grass to the marsh grass. On the subject property, when the range grass is gone, the cattle must be moved even though the marsh grass has not been entirely consumed. In other areas, such as the Klamath marsh area, the grazing is more uniform.
 

 In the area of operating expenses, Mr. Huntsman’s estimate of expenses was based upon an average taken from three comparable leases. However, no adjustment was made to take into account the extensive cross fencing or the admittedly "unusual” expenses of fertilizer and reseeding. Mr. Huntsman also appears to have given inadequate consideration to the additional expenses of irrigating where the evidence showed that the comparable lease areas were easier to irrigate. Finally, there was some evidence to indicate that the Klamath marsh area has a growing season 30 to 60
 
 *[254]
 
 days longer than the subject property. This would reduce the rent per AUM substantially.
 

 As is often the case, the court finds that there are a number of questions concerning the plaintiff’s evidence of expenses incurred. If Mr. Cliff’s testimony was correctly understood, it is possible that the expenses for the property would exceed the gross income estimated by Mr. Rothrock. Mr. Cliff indicated that he hired one man full time at $700 per month plus "meat, milk and house” as a general operator, cat skinner and maintenance man. He also had one man full time at $600 per month just to maintain the fences. When the total of these expenses is added to the fertilizer and reseeding expenses, which were approximately $3,000 to $4,000 per year, the total approaches or exceeds the estimated gross of $12,900.
 

 Based upon the evidence adduced by the parties, the court concludes that the correct farm use value for the subject property as of January 1, 1977, is as follows:
 

 Tax Lot No. Acreage Value
 

 23-9--3600 200 $ 7,469
 

 23-9-•5300 240 8,963
 

 23-9 -8600 160 5,975
 

 23-9 -9200 326 12,175
 

 23-9 -9600 80 2,988
 

 23-9--12300 50 1,867
 

 23- 9 -12100 435.54 16,266
 

 24- 9-■1200 238.96 8,924
 

 24-9--2500 120 4,482
 

 24-8-■2600 225 8,403
 

 The defendant’s Order No. VL 79-49, dated February 15,1979, is set aside and held for naught and the County Assessor and Tax Collector of Klamath County shall amend the assessment and tax rolls for 1977-1978 with respect to the subject property as necessary to conform with this decision. If taxes have been paid by the plaintiff in excess of those required by the tax roll as amended, the excess, with statutory interest thereon, shall be remitted to the plaintiff by the Board
 
 *[255]
 
 of County Commissioners of Klamath County, Oregon, pursuant to ORS 311.806 and 311.812.
 

 Costs to neither party.